UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**JORGE TENNIN,**

    **PLAINTIFF,**

**CASE NO.:**

v.

**COLLEGE OF LAKE COUNTY,
GABE LARA, and
MERIZA CANDIA-THOMPSON,
in their individual and official capacity,**

    **DEFENDANTS.**

## COMPLAINT

COMES NOW Plaintiff Jorge Tennin ("Mr. Tennin" or "Plaintiff") by and through undersigned attorney, and files this Complaint against Defendant College of Lake County ("College"), Defendant Lara Gabe ("Defendants Lara"), and Defendant Mariza Candia-Thompson ("Defendant Candia-Thompson) showing the Court as follows:

## INTRODUCTION

1. This is an action brought under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), alleging discrimination of the basis of race; under Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634 ("ADEA"); and for deprivation of civil rights under 42 USC § 1983 ("Section 1983").

2. Plaintiff seeks compensatory damages under 42 U.S.C.§ 1981a, Title VII, and the statutory and common law of the State of Illinois.

3. Plaintiff seeks costs and attorneys' fees pursuant to 42 U.S.C. § 1988; Title VII, 42 U.S.C. § 2000e-5(k); Fed. R. Civ. P. 54; Section 7(b) of the ADEA, 29 U.S.C.A. §626 (c); and the statutory and common law of the State of Illinois .

## PARTIES, JURISDICTION, VENUE AND SERVICE

4. Plaintiff is 50 years old, African-American citizen of the State of Texas and resident of City of Rosharon, Fort Bend County, Texas. Plaintiff is a former employee of Defendant College of Lake County. Plaintiff submits himself to the jurisdiction of this Court.

5. Defendant College of Lake County is a public community college in Lake County, Illinois, organized and existing under the laws of the State of Illinois and is, therefore, subject to the jurisdiction of this Court.

6. Defendant Gabe Lara is an employee of the College of Lake County and at all times relevant herein was Plaintiff's direct supervisor. Defendant Lara is a Latino male.

7. Defendant Meriza Candia-Thompson is an employee of the College of Lake County and at all times relevant herein was a subordinate of Plaintiff. Defendant Candia-Thompson is a Latino woman.

8. This Court has jurisdiction by virtue of 28 U.S.C. § 1331 (federal question), §1343 (civil rights), and § 1367 (supplemental jurisdiction, as such claims arise out of the same case or controversy as Plaintiff's Title VII claims).

9. Venue is proper in the District, pursuant to 28 U.S.C. § 1391(b) and N.D. Civ. R. 82.1, because Defendant College of Lake County is a public community college in the District and the unlawful actions and practices alleged herein were committed in the District

10. Defendant College of Lake County is an "employer" within the meaning of Title VII.

11. Defendant College of Lake County has more than five hundred (500) employees.

12. Defendant College of Lake County is a "person" under § 1983.

13. Defendant College of Lake County is a public employer and Plaintiff was a public employee.

14. Defendant Lara is a natural person and at all relevant times was an employee of the College of Lake County. Upon information and belief Defendant Lara is still employed with the College.

15. Defendant Candia-Thompson is a natural person and at all relevant times was an employee of the College of Lake County. Upon information and belief Defendant Candia-Thompson is still employed with the College.

16. Defendants violated Title VII, ADEA, 42 U.S.C. §1981 and 42 U.S.C. §1983 when they subjected Plaintiff to employment discrimination on the basis of race and age.

17. Defendants acted intentionally and under color of law when they purposefully discriminated against Plaintiff on the base of his race and age and created a hostile work environment that was the proximate cause of Plaintiff' constructive discharge.

## ADMINISTRATIVE PROCEEDINGS AND NOTICE

18. Plaintiff filed a charge of discrimination (Charge No. 440-2022-04317) (the "Charge") with the Equal Employment Opportunity Commission ("EEOC") on or around February 4, 2022, which was well within 180 days of the occurrence of the discriminatory events of which he complains. A true copy of the EEOC Charge is here attached as Exhibit A.

19. Upon information and belief, Defendant received timely notice of the Charge from the EEOC.

20. On or about July 18, 2022, Plaintiff received a Notice of Right to Sue from the EEOC. A true copy of the Notice of Right to Sue is here attached as Exhibit B.

21. The 90-day period of time for Plaintiff to file this suit was set to expire on or about October 18, 2022. This civil action is instituted in the appropriate court within the 90 days period.

22. At all times, Defendants have had full notice of Plaintiff's claims against them.

### STATEMENT OF FACTS
**Plaintiff's Employment with the College of Lake County**

23. Plaintiff began his employment with the College of Lake County on October 5, 2005, as a Specialist in Educational Talent Search and also taught GED courses.

24. In 2011, Plaintiff was promoted to Director of Student Activities and Inclusion.

25. Plaintiff was constructively terminated on or about January 7, 2022, because he could not tolerate any longer the harassment Defendants Lara and Candia-Thompson subjected him to, and also because he believed that his termination was eminent.

26. At all times, before the arrival of Defendant Lara, Plaintiff met or exceeded Defendant's College of Lake County reasonable expectations for his employment. In fact, he was happily and successfully employed with the College for over 17 years.

27. At the time of his constructive termination, Plaintiff's gross salary was $100,100, per year. The employment with the College of Lake County also included generous benefits such as full medical, dental, vision, and life insurance.

28. Thereafter Plaintiff was unemployed for four months during which time he was forced to live off his savings. On or about April 16, 2022 Plaintiff received a job offer from the University of Houston, Clear Lake, Texas which offer he accepted and relocated to Texas in June of 2022. Plaintiff's title is Assistant Director Student Success Center. His salary at University of Houston is $67,000 with benefits.

29. Defendant Lara began working at the College of Lake County on July 6, 2020.

30. Since his arrival he established a chaotic leadership style that made everyone, especially the Plaintiff, feel uncomfortable.

31. On or about October 25, 2021, Defendant Lara openly admitted he likes chaos.

32. Since his arrival at the College, Defendant Lara has intentionally targeted Plaintiff to force him to leave.

33. Defendant Lara openly said that Plaintiff's staff was "too old", and that newer and younger staff was needed. Plaintiff was in the same age category as his staff who at the time happen to be three African Americans and one Latino.

34. Since Defendant Lara's arrival, of the four staff members Defendant Lara considered to be "too old", three, including Plaintiff, (all of the African Americans) have left the College.

35. Four more employees left the division in the early part of 2022 which brings the total to seven staff members who have left the College's employ under Defendant Lara's leadership within a year.

36. At all times relevant hereto, there were other directors working at the College but Defendant Lara only targeted Plaintiff. Plaintiff knows this because he asked the other directors with whom he worked and shared a close relationship for years before Defendant Lara was hired by the College, about their encounters with Defendant Lara.

37. Plaintiff specifically asked the other directors if Defendant Lara ever harassed them and all of them said he did not. All of the other directors Defendant Lara did not harass were primarily White.

38. Defendant Lara would only harass Plaintiff claiming Plaintiff was not "directing" his staff when Plaintiff's staff had the most experience and they knew what they were doing because they had been doing it just fine for several years before Defendant Lara's arrival.

39. On one occasion Defendant Lara had a meeting with Plaintiff's staff without Plaintiff. Lara wanted to further coerce the staff to be on his side and against Plaintiff. He did not do that with any other directors.

40. Plaintiff supervised his staff for over a year before Defendant Lara was hired and everything was fine. Defendant Lara then came in and tried to change how the daily operations of the Student's Activities office ran. Specifically, Lara required Plaintiff to redirect certain of his staff who recruited students by working in the community. Lara demanded that the staff no longer take part in the community outreach and work. When Plaintiff explained that their work was integral in growing student enrollment, Lara stated they are not community activist/workers and should not be working within the community and further told Plaintiff to tell them not to do that or Plaintiff would be disciplined. Lara also stated they are too old anyway. Defendant Lara and Plaintiff had different management styles, but Defendant Lara felt it was his way or the highway. He openly and often said to Plaintiff: "If you don't like it, get off the train."

41. On several occasions, Defendant Lara purposedly gave specific conflicting directions to Plaintiff when asking him to execute a task but then after the task was completed, he would give completely different instructions, and then accuse Plaintiff of poor performance.

42. For example, on October 20, 2021, Defendant Lara sent Plaintiff a request to learn what his coordinators were doing on October 18, 2022. Via email Defendant Lara specifically stated: "Thanks Jorge. I made some comments below in red. Also, can you send me a list on the BAT Team / funding? I'm completing my monthly report for Karen, and I want to add the Total $ amount available for Distribution, a list of all the requests with amounts asked vs amounts approved, and a current balance. Plus -Can you just send me a list of all things your

coordinators are working on this semester? I'd like to get a sense on what they are working on, and their time is being distributed. Thanks"

43. Plaintiff promptly sent Defendant Lara the lists he had requested.

44. Defendant Lara then criticized what Plaintiff sent to him saying that it was not detailed enough when Lara had only asked Plaintiff for lists.

45. Defendant Lara often changed and or contradicted what he said once he made the decision, so Plaintiff and his staff did not know what to do. This practice of confusing and conflicting directives negatively impacted Plaintiff's performance (which Plaintiff believed was the goal) as Plaintiff started to receive many complaints from his staff about Lara.

46. On one occasion, when setting up the Budget Allocation Team (BAT), Plaintiff and his staff were looking to add the Student Government Association (SGA) Treasurer, however, they did not have one. Defendant Lara made it clear to not add anyone from SGA, because Lara did not want anyone thinking that SGA controlled BAT. Then, months later, Plaintiff let Defendant Lara know that they were missing the SGA Treasurer because they had not filled the position yet. Defendant Lara then suggested Plaintiff add an SGA member. Plaintiff reminded him that he adamantly said "no" before and then Lara acted if he was annoyed by Plaintiff and stated that it was obvious if they did not have a Treasurer, to add another SGA member, but that was the opposite of what Lara had previously said.

47. One of the first times Defendant Lara gave Plaintiff a disciplinary write-up was for Plaintiff missing the Quartrly1 report. Plaintiff had sent numerous emails asking for assistance and put forth an effort to get the Q1 Report done prior to the deadline. Plaintiff felt this was something Defendant Lara and he could have done together and completed it since it was just an update on what Defendant Lara was working on to reach the college goals. Plaintiff had

been working on the goals – with no directions from Defendant Lara - but when Plaintiff asked for assistance to complete the Q1 task which he could not complete because he lacked directions from Defendant Lara, Defendant Lara denied his request and then accused Plaintiff of not getting the Q1 report in on time or at all. Defendant Lara issued a disciplinary write up for the Q1 report before it was even due.

48. Since that first incident, Plaintiff asked Defendant Lara several times to let him know the reasons he wrote Plaintiff up; but Defendant Lara never let him know. Lara constantly threatened Plaintiff with discipline stating that Karen Hlavin, Vice President of Student Development wanted Plaintiff to be disciplined. When Plaintiff asked why, he was never given a direct answer, but would say "because of everything that is going on. Plaintiff therefore believes his personnel file may include many disciplinary actions of which he is unaware. As a result Plaintiff reported Lara to Human Resources to no avail, because the conduct continued.

49. Plaintiff felt that Defendant Lara's refusal to share with Plaintiff what he thought Plaintiff was doing wrong was a setup; a setup especially calculated to make sure Plaintiff would not be prepared for the Q2 goals so that later, Defendant Lara could have - once again – said that Plaintiff had failed to prepare the quarterly report (this time the Q2), and use the failure of Plaintiff to complete the task on time as an additional reason to terminate Plaintiff.

50. Defendant Lara formerly worked at the University of Florida. Upon information and belief Defendant Candia-Thompson worked as Defendant Lara's assistant at the University of Florida.

51. Soon after he began to work for the College of Lake County, Defendant Lara exercised pressure on the hiring committee of his department to have Defendant Candia-Thompson hired in his department.

52. Plaintiff was part of the search committee when Defendant Candia-Thompson was hired. When the committe selected their top five candidates, Defendant Candia-Thompson was not one of them. Defendant Lara coerced the committee into adding her as a 6th candidate. Later, 2 candidates dropped out, 2 took on other jobs and only 2 candidates remained in the hiring rosters: Defendant Candia-Thompson and another candidate. The committee had previously found that both candidates were equally positioned in terms of skill and experience to fill in the vacancy but inexplicably everyone on the committee voted for Defendant Candia-Thompson. Defendant Candia-Thompson because she performed so well in the oral interview.  In hindsight, it appears that she had possibly been coached.

53.  Later on, the hiring committee found out that Defendant Lara walked Defendant Candia-Thompson down the aisle for her wedding and she used to babysit Defendant Lara's kids.

54. Plaintiff did not know the extent of their relationship and how deleterious the presence of Defendant Candia-Thompson would be for Plaintiff and his staff, until after Defendant Candia-Thompson was hired to work with them. Soon, Plaintiff discovered that Defendant Lara was using Defendant Candia-Thompson to sabotage Plaintiff's work and leadership. When Plaintiff would give Defendant Candia-Thompson a directive, she would go to Defendant Lara and then Defendant Lara would challenge Plaintiff's directives to her, never giving Plaintiff a chance to direct his staff because he would manipulate and turn against Plaintiff using Defendant Candia-Thompson as his primary ally in the wrongdoing.

55. On another occasion, Defendant Lara cancelled Plaintiff's *Poetry & Jazz in Motion* event that was held every year at the College during Black History Month. Defendant Lara claimed that he could not justify paying 6 poets and a Jazz Trio $10,000.00 (all African American performers). The *Poetry & Jazz in Motion* event was a very powerful event that the College held for 12 years straight with approximately 300 people in attendance. The event was important to the African American College community. The event was also important because the College of Lake County is a community college which is supposed to cater to the community.

56. Shortly after cancelling the *Poetry & Jazz in Motion* event, using a limited budget rationale, Defendant Lara hired a Latino speaker for $17,000, to speak via Zoom, to a remote audience attended only by approximately 60 people, mostly College employees. The remote event did not benefit the College students in any way.

57. On or about October 23, 2021- Plaintiff met with Defendant Lara because Defendant Lara claimed that Plaintiff's staff needed to be more visible and get out of their offices. As a result, and in an effort to meet Lara's requests, Plaintiff created Student Activity and Inclusion Days where his Plaintiff and his staff would be out in the student commons every Tuesday, Wednesday and Thursday. Plaintiff informed Defendant Lara of the plan and told him Plaintiff would have a DJ and novelty treats for Thursdays. On Tuesday, October 26, the DJ came and performed. He also returned the next day, as scheduled, but facilities asked him to leave because he would be too noisy for employment day on Student Street. Plaintiff's assistant Vicki Hanner then informed Plaintiff that the vendors' contracts, - which were Defendant Lara's responsibility – were not yet signed and for that reason the DJs should not be on campus. Defendant Lara then blamed Plaintiff for allowing vendors on campus without

signed contracts. But it was Lara who forced Plaintiff to create a last-minute plan to get Plaintiff's coordinators out of their offices and he (Lara) then, was responsible for signing the contracts, not Plaintiff.

58. Plaintiff believed he had no choice but to resign, as he believed termination was imminent, and submitted his letter of resignation on December 20, 2021, which letter clearly stated that his last day at the college would be January 7, 2022. Several days after Plaintiff submitted his letter of resignation, Defendant Lara removed Plaintiff's access to his email and institutional account, while Plaintiff was still working full time, and legally employed, at the College.

59. At all times relevant, Defendant Lara would constantly threaten to "discipline" Plaintiff or his staff for things that did not merit discipline, including a write up or termination. It was an intolerable situation that caused Plaintiff to suffer severe mental anguish. Several members of Plaintiff's former staff also suffered and or witnessed the intolerable conditions under which Defendant Lara forced them to work.

60. Plaintiff was constructively terminated and was eventually, replaced with a White individual, whom he believes was younger than Plaintiff.

## COUNT I
## VIOLATION OF TITLE VII DISCRIMINATION BASED UPON RACE

61. Plaintiff incorporates by reference all of the allegations set forth in the preceding paragraphs above.

62. Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment practices and specifically 42 U.S.C.A. § 2000e-2 provides in pertinent part:

> "**(a) Employer practices**
> It shall be an unlawful employment practice for an employer—
> **(1)** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;"

63. Plaintiff has filed this cause subsequent to a timely filing of a Charge of Discrimination based upon race and age with the Equal Employment Opportunity Commission, and receipt of a Right to Sue Letter ("Letter") a true and correct copy of which is attached to this Complaint as Exhibits "A" and "B".

64. Plaintiff, at all times pertinent to this Complaint, was a resident within the venue and jurisdiction of this judicial district and was within the protected race group (Black) as provided by Title VII.

65. At all times relevant to this Complaint, the College of Lake County, operated and did business within the venue and jurisdiction of this judicial circuit.

66. During the course of his employment Plaintiff came under the supervision of Defendant Lara who subjected Mr. Tennin to differential terms and conditions of employment, and constructive termination, because of his race.

67 Defendant College of Lake County's conduct as previously alleged at length herein and as described in the Charge of Discrimination attached to this Complaint constitutes discrimination based upon race in direct violation of Title VII.

68. As a result of Defendant's discriminatory conduct, Plaintiff has been damaged in his career and to his person and has otherwise suffered monetary damages.

WHEREFORE, Plaintiff JORGE TENNIN, demands judgment against the Defendant, the College of Lake County as follows:

    A.    For an award of $300,000 in compensatory damages suffered because of the discrimination; Plaintiff's injury to his career, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages and fringe benefits;

    B.    For attorney's fees and costs of this suit, pursuant to applicable statute; and

    C.    For such other and further relief, as is just and equitable.

## COUNT II
## VIOLATION OF THE ADEA

69. Plaintiff incorporates by reference all of the allegations set forth in the preceding paragraphs 1-60 above.

70. Plaintiff brings this action pursuant to the Age Discrimination in Employment Act of 1967. ("ADEA"), 29 U.S.C.A. §§621 et seq.

71. Jurisdiction also arises pursuant to 28 U.S.C.A. §1343(4).

72. At all times pertinent to this Complaint, Plaintiff was a resident within the venue and jurisdiction of this judicial district and was within the protected age group as provided by the ADEA.

73. At all times pertinent to this Complaint, the Defendant operated and did business within the venue and jurisdiction of this judicial circuit.

74. Plaintiff was employed by the Defendant since approximately 2005. At the time of the events giving rise to this complaint, Mr. Tennin was 50 years of age.

75. In direct violation of the ADEA, the Defendants engaged in the age discriminatory acts described in the Charge of Discrimination, attached to the complaint, and incorporated herein by reference, including but not limited to:

    a. Disciplined Mr. Tennin for behavior that did not warrant the discipline.

    b. Disciplined Mr. Tennin for behavior that other employees were not disciplined for.

    c. Admonished, humiliated and embarrassed Mr. Tennin by repeatedly harassing him including yelling, and accusing him of wrongdoing in front of his co-workers.

    e. Treated TENNIN differently from other similarly situated employees;

  f. Subjected Mr. Tennin to conflicting directives, excessive scrutiny, discipline, wrongful allegations of misconduct and harassment as part of a conspiracy intended to result in his termination;

  g. Created a hostile work environment by the activities listed above; and

  h. Constructively terminated Mr. Tennin.

76. As a result of Defendant's discriminatory conduct, Plaintiff has been damaged in his career and has otherwise suffered monetary damages.

  WHEREFORE, Plaintiff Tennin, demands judgment against the Defendant, College of Lake County as follows:

  A. For an award of compensatory damages for Plaintiff's injury to his career, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages and fringe benefits;

  B. For Attorney's fees and costs of this suit, pursuant to Section 7(b) of the ADEA, 29 U.S.C.A. §626 (c); and

  C. For such other and further relief as is just and equitable.

## COUNT III
## ADEA – WILLFUL VIOLATION

77. Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 60 and 70 through 76 above.

78. Defendants' discriminatory conduct was intentional and/or in reckless disregard for Plaintiff's rights under the law and these acts constitute willful indifference to said rights.

  WHEREFORE, Plaintiff Tennin, demands judgment against the Defendant, College of Lake County as follows:

  A. For damages in an amount equal to Plaintiff's back pay and benefits pursuant to Section 7(b) of the ADEA, 29 U.S.C.A. §626 (b);

B. For an award of compensatory damages for Plaintiff's injury to his career, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages and fringe benefits;

C. For reinstatement to his previous position, or in the alternative, for front pay, pursuant to Section 7 (e) of the ADEA, 29 U.S.C.A. §626 (b);

D. For Attorney's fees and costs of this suit, pursuant to Section 7(b) of the ADEA, 29 U.S.C.A. §626 (c);

E. Punitive damages; and

F. For such other and further relief as is just and equitable.

## COUNT IV—VIOLATION OF 42 U.S.C. § 1983

79. Plaintiff realleges and incorporates by reference paragraphs 1 through 60 inclusive.

80. The College of Lake County is a publicly funded university. The College of Lake County and its employees including Mr. Lara and Ms. Candia-Thompson, are state actors for purposes of Section 1983.

81. Defendants, acting under color of state law, deprived Mr. Tennin of the same privileges as those provided to similarly situated employees outside of his protected class.

82. Defendants' decision to deprive Mr. Tennin of the same rights and privileges was based on Mr. Tennin's race and/or age.

83. As a result of Defendants' discriminatory conduct, Plaintiff has been damaged in his career and to his person and has otherwise suffered monetary damages.

WHEREFORE, Plaintiff Jorge Tennin, demands judgment against the Defendants, the College of Lake County as follows:

A. For an award of $300,000 in compensatory damages suffered because of the discrimination; Plaintiff's injury to his career, emotional pain and suffering, inconvenience, mental

anguish, loss of enjoyment of life, punitive damages, and other nonpecuniary damages and fringe benefits;

  B.  For attorney's fees and costs of this suit, pursuant to applicable statute; and

  C.  For such other and further relief, as is just and equitable.

**COUNT V**
**Title VII, 42 U.S.C. § 2000e, *et seq.***
**Discrimination and Harassment**

84. Plaintiff incorporates the preceding paragraphs 1-60 and further alleges as follows.

85. Plaintiff is an "employee" as that term is defined by at 42 U.S.C. § 2000e(f).

86. Defendant is an "employer" as that term is defined at 42 U.S.C. § 2000e(b).

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. prohibits discrimination based on sex or race in employment.

87. Based on the above-described acts, practices and omission, Defendant engaged in unlawful discrimination under Title VII based on Plaintiff's race and age.

88. Furthermore, Defendant's illegal actions against Plaintiff resulted in adverse impacts on the terms and conditions of Plaintiff's employment and further subjected Plaintiff to harassment and a hostile work environment.

89. Defendant's conduct was sufficiently severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

90. Defendant knew or should have known of Mr. Lara and Ms. Candia-Thompson and other's conduct and failed to take prompt, remedial action to stop their conduct, because Plaintiff several occasions reported Lara discriminatory treatment to Crandall Collins, the Colleges Human Resources Department.

91. As such, Defendant violated 42 U.S.C. § 2000e-2(a) and discriminated against Plaintiff by not only subjecting him to sufficiently severe or pervasive harassment based on race and age so as

to alter the conditions and terms of his employment, but also failing to act and condoning or tolerating such harassment, subjecting Plaintiff to less favorable terms and conditions of employment by imposing heightened and/or disproportionate discipline on Plaintiff, and finally by constructively terminating the Plaintiff.

92. The reasons Defendant submits for changing the terms and conditions of Plaintiff's employment and for constructively terminating him are false and pretext for unlawful discrimination and retaliation.

93. In unlawfully discriminating and retaliating against Plaintiff, Defendants acted willfully, wantonly and/or with malic or with conscious and/or reckless indifference to Plaintiff's equal rights under law, thereby necessitating the imposition of exemplary damages

94. The allegations more particularly described above caused Plaintiff damages as set forth herein.

WHEREFORE, Plaintiff Jorge Tennin, demands judgment against the Defendants, the College of Lake County as follows:

A. For an award of $300,000 in compensatory damages suffered because of the discrimination; Plaintiff's injury to his career, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, punitive damages, and other nonpecuniary damages and fringe benefits;

D. For attorney's fees and costs of this suit, pursuant to applicable statute; and

E. For such other and further relief, as is just and equitable.

## COUNT VI
### Violation of 42 U.S.C. § 1981

**Discrimination and Harassment**

95. Plaintiff realleges and incorporates by reference paragraphs 1 through 60

inclusive.

96. Plaintiff was discriminated against in violation of 42 U.S.C. § 1981.

97. Plaintiff is a member of a protected class as he is Black and over the age of 40 years.

98. Plaintiff was subjected to disparate treatment, was subjected to harassment, a hostile work environment, and constructively discharged.

99. Defendants Lara and Candida-Thompson, in their individual capacities had an intent to discriminate against Plaintiff on the basis of race.

100. The discrimination complained of by the Plaintiff concerned one or more of the activities enumerated in the statute includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

101. Defendant Lara and Candida-Thompson in their respective individual capacities as decision makers over Plaintiff s working conditions, supervision, caused or participated in the deprivation of Plaintiff's rights under 42 U.S.C. § 1981.

WHEREFORE, Plaintiff demands judgment against Defendants Lara and Candida-Thompson, in their individual capacities. compensatory damages, prejudgment interest, attorneys' fees, costs, and such other and further relief as the court deems proper.

WHEREFORE, Plaintiff demands judgment against Defendants, COLLEGE OF LAKE COUNTY, LARA, and CANDIA-THOMPSON for compensatory, punitive damages, prejudgment interest, attorneys' fees, costs, and such other and further relief as the court deems proper.

**Plaintiff demands a trial by jury.**

                                          Respectfully submitted,

                                          JORGE TENNIN

                                          By      <u>s/ Calvita J. Frederick</u>
                                                        Attorney for Plaintiff

Calvita J. Frederick
Post Office Box 802976
Chicago, Illinois 60680-2976
312-421-5544
ARDC # 6184001
Calvita.frederick@att.net