**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JORGE TENNIN,

      Plaintiff,

          v.

COLLEGE OF LAKE COUNTY, GABE
LARA, in his official and individual
capacity, and MERIZA CANDIA-
THOMPSON, in her official and
individual capacity,

      Defendants.

No. 22-cv-05663
Judge John F. Kness

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jorge Tennin, who was previously employed at the College of Lake County (the "College"), filed an Amended Complaint alleging claims under 42 U.S.C. § 2000e *et seq.* ("Title VII") of Race Discrimination, Age Discrimination, and Harassment against the College, along with a claim under 42 U.S.C. § 1983 of race discrimination against individual defendants Gabe Lara and Meriza Candia-Thompson (the "Individual Defendants").

Defendants have moved to dismiss the Complaint. Defendants argue that Plaintiff's Title VII (Counts I and V) and ADEA (Counts II and III) claims should be dismissed as untimely; that the Section 1983 (Count IV) claim should be dismissed because Plaintiff fails to allege the personal involvement of the Individual Defendants in the Constitutional deprivation; and that the prayer for punitive damages against

the College should be stricken as improper.

Although Plaintiffs' Title VII and ADEA claims are untimely, Plaintiff has stated a viable claim under Section 1983. And because Plaintiff seeks punitive damages against only the Individual Defendants in their individual capacities, the motion to strike the prayer for punitive damages is moot. Accordingly, and for the reasons that follow, Defendants' motion to dismiss is granted in part and denied in part.

## I. BACKGROUND

Plaintiff Jorge Tennin is a fifty-year-old African American man and previous employee of Defendant College of Lake County. (Dkt. 11 ¶ 4.) Defendant College of Lake County (the "College") is a public community college located in Lake County, Illinois (*Id.* ¶ 5.) Under the Public Community College Act of Illinois, 110 ILCS 805/1-1 *et seq.*, the College is considered a unit of local government. *See Bd. of Trs. of Cmty. Coll. Dist. No. 502 v. Dep't of Prof'l Regul.*, 842 N.E.2d 1255, 1266 (Ill. Ct. App. 2006). Defendant Gabe Lara is, in Plaintiff's words, a "Latino employee" of the College. Lara began working at the College in 2020 as Dean of Student Affairs and was Plaintiff's direct supervisor. (*Id.* ¶¶ 6, 29.) Defendant Meriza Candia-Thompson is also a "Latino employee" of the College, with the position of Coordinator of Student Organizations and Multicultural Programs. (*Id.* ¶ 7.) Candia-Thompson was Plaintiff's subordinate. (*Id.*)

Plaintiff began working at the College in 2005 as a Specialist in Educational Talent Search while also teaching GED courses. (*Id.* ¶ 23.) The College promoted

Plaintiff to Director of Student Activities and Inclusion in 2011. (*Id.* ¶ 24.) Until Lara's arrival in 2020, Plaintiff alleges he "was happily and successfully employed with the College." (*Id.* ¶ 26.) Plaintiff alleges that, upon Lara's arrival, he began experiencing problems in his employment. (*Id.* ¶¶ 25–26, 30–32.)

Lara oversaw Plaintiff's work—in particular, Plaintiff's direction of his staff. (*Id.* ¶ 26.) Plaintiff alleges that Lara stated that Plaintiff's staff, all in the same age category as Plaintiff, were "too old." (*Id.* ¶ 33.) These individuals included three African Americans and one Latino. (*Id.* ¶¶ 33–34.) All three African American employees left the College after Lara arrived. (*Id.*) In total, seven employees left the College within a year of Lara's arrival. (*Id.* ¶ 35.) Out of all the directors, Plaintiff alleges that Lara harassed only him. (*Id.* ¶¶ 36–37.) And although Plaintiff had directed his staff for several years without issue, Lara claimed Plaintiff was not directing his staff properly. (*Id.* ¶ 38.) Lara met with Plaintiff's staff without Plaintiff present and required Plaintiff to redirect how his staff was working. (*Id.* ¶¶ 38–40.) Throughout this time, Plaintiff alleges that Lara disregarded Plaintiff's opinions, once stating, "If you don't like it, get off the train." (*Id.* ¶ 40.)

Plaintiff alleges that, several times, Lara purposefully "gave specific conflicting directions" when asking Plaintiff to execute a task, later giving different instructions thereby making it hard for Plaintiff to successfully execute his job. (*Id.* ¶ 41.) Lara would then accuse Plaintiff of poor performance. (*Id.*) For example, Plaintiff alleges that Lara asked Plaintiff for several lists regarding various topics, and, upon receipt of these lists, criticized Plaintiff for not providing enough detail. (*Id.* ¶¶ 42–44.)

Another time, Plaintiff wanted to include the Student Government Association (SGA) Treasurer in the budget allocation team, but Lara refused. (*Id.* ¶ 46.) Lara later suggested adding an SGA member to the team, saying it was obvious to add an SGA member in the absence of a treasurer. (*Id.*) Plaintiff contends that the purpose of Lara's "confusing and conflicting directives" was to damage Plaintiff's performance. (*Id.* ¶ 45.)

Lara also issued disciplinary write-ups against Plaintiff, the first of these because Plaintiff missed an important report. (*Id.* ¶ 47.) Plaintiff alleges that Lara wrote Plaintiff up before the report was due, however, and gave no direction with respect to the report, even after Plaintiff asked for assistance. (*Id.*) Despite requesting clarification of this write-up, Lara offered no direct answers and instead "constantly" threatened disciplinary action based on unspecified reasons. (*Id.* ¶ 48.)

Another issue involved the cancellation of Plaintiff's annual Poetry & Jazz in Motion event, hosted during Black History Month. (*Id.* ¶ 55.) The College had held this event for the preceding twelve years, with around three hundred people in attendance, and it was very important to the African American community at the College. (*Id.*) Plaintiff alleges that Lara cancelled the event, claiming "he could not justify paying 6 poets and a Jazz Trio $10,000." (*Id.*) Yet shortly after, Lara spent $17,000 for a Latino speaker event, held on Zoom, attended by about sixty College employees. (*Id.* ¶ 56.)

The last alleged event occurred in October 2021, when Plaintiff met with Lara to discuss the need for Plaintiff to increase the visibility of his staff. (*Id.* ¶ 57.) In

response, Plaintiff created Student Activity and Inclusion Days for which his staff would be on campus, in the student commons. (*Id.*) Despite having informed Lara of the plan, and having two successful events, the third Student Activity and Inclusion Day faced issues when College facilities asked the hired DJ to leave, citing unsigned vendors' contracts. (*Id.*) These contracts were Lara's responsibility, yet Lara blamed Plaintiff for allowing a vendor on campus without a signed contract. (*Id.*)

Plaintiff also had issues with Defendant Candia-Thompson. (*Id.* ¶¶ 50–54.) Soon after beginning his employment at the College, Lara "exercised pressure on the hiring committee" to have Candia-Thompson hired as Coordinator of Student Organizations and Multicultural Programs in the Student Activities and Inclusion Department, making Candia-Thompson Plaintiff's subordinate. (*Id.* ¶¶ 6, 51.) The College's hiring committee, which included Plaintiff, did not select Candia-Thompson in their top five candidates, but Lara "coerced" the committee to include Candia-Thompson as a sixth candidate. (*Id.* ¶ 52.) When the time came to choose between Candia-Thompson and another candidate, both of whom had equal qualifications, the entire committee voted for Candia-Thompson because she performed well in the interview. (*Id.*) Plaintiff alleges that Candia-Thompson "had possibly been coached." (*Id.*)

Plaintiff further alleges that Candia-Thompson previously worked for Lara as his assistant at the University of Florida; Lara walked Candia-Thompson down the aisle at her wedding; and Candia-Thompson babysat Lara's children. (*Id.* ¶¶ 50, 53.) Soon after Candia-Thompson began, Plaintiff alleges that Lara "was using Defendant

Candia-Thompson to sabotage Plaintiff's work and leadership." (*Id.* ¶ 54.) When Plaintiff would give Candia-Thompson a directive, Candia-Thompson would channel it to Lara, who then undermined and challenged Plaintiff's authority. (*Id.*)

Plaintiff believed, based on all of these occurrences, that he "had no choice but to resign," and in fact Plaintiff submitted his letter of resignation on December 20, 2021. (*Id.* ¶ 58.) Plaintiff's letter clearly stated Plaintiff's last day would be January 7, 2022, but Lara removed Plaintiff's email access and institutional account before that date. (*Id.*)

On February 4, 2022, Plaintiff filed a charge with the EEOC alleging that he had been discriminated against based on his race and age, and in retaliation for engaging in a protected activity. (Dkt. 1-1.) Plaintiff received a right to sue letter from the EEOC on April 13, 2022. (Dkt. 1-2 at 1.) On October 15, 2022, Plaintiff filed a six-count Complaint in this Court. (Dkt. 1.) Plaintiff later filed an Amended five-count Complaint on January 12, 2023. (Dkt. 11.) Count I of the Complaint alleges that Defendant College of Lake County (the "College") violated Title VII of the Civil Rights Act of 1964 through discrimination based on race. (Dkt. 11 ¶¶ 61–68.) Counts II and III allege that the College violated the Age Discrimination and Employment Act (ADEA). (*Id.* ¶¶ 69–78.) Count IV alleges that Defendants Lara and Candia-Thompson violated 42 U.S.C. § 1983 by depriving Plaintiff "of the same privileges as those provided to similarly situated employees outside of his protected class." (*Id.* ¶ 79–83.) Finally, Count V alleges that the College violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*. (*Id.* ¶¶ 84–94.)

6

On February 10, 2023, Defendants moved to dismiss the Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure; Defendants also moved to strike the punitive damages claim under Rule 12(f) of the Federal Rules of Civil Procedure. (Dkt. 15.) Defendants argue that Plaintiff's Title VII and ADEA claims were untimely and warrant dismissal. (*Id.* at 1.) Defendants also argue that Plaintiff's Section 1983 claims against Defendants Lara and Candia-Thompson are not sufficiently pled, because Plaintiff did not establish Defendants' personal involvement in the alleged Constitutional deprivation. (*Id.* at 2.) Finally, Defendants contend that Plaintiff's prayer for punitive damages must be stricken because the College is a local government body, against which punitive damages are unavailable under Section 1983. (*Id.* at 3.)

## II.     LEGAL STANDARD

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that conveys a story that holds together." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) (cleaned up). In evaluating a motion to dismiss, the Court must

accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. But even though factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Id.* at 678–79.

## III.   DISCUSSION

### A.    Title VII and ADEA Claims.

Defendants move to dismiss Plaintiff's Title VII (Counts I and V) and ADEA (Counts II and III) claims as time-barred. (Dkt. 15 at 1.) A plaintiff must file suit within ninety days of receiving a Dismissal and Notice of Rights Letter from the Equal Employment Opportunity Commission ("EEOC"). *Houston v. Sidley & Austin*, 185 F.3d 837, 838–39 (7th Cir. 1999); 42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(e). When a plaintiff is represented by counsel, the ninety-day period begins when *either* plaintiff or counsel receives the notice. *Jones v. Madison Serv. Corp.*, 744 F.2d 1309, 1312 (7th Cir. 1984) ("We hold that the 90-day period of limitation set forth in 42 U.S.C. § 2000e-5(f)(1) begins to run on the date that the EEOC right-to-sue notice is actually received either by the claimant or by the attorney representing him.").

Defendants contend that "Exhibit B shows that the EEOC issued [Plaintiff] the Dismissal and Notice of Rights Letter on April 13, 2022, meaning that he had 90 days, until July 12, 2022, to timely file his lawsuit." (Defs.' Mem. Supp. at 3.) In response, relying on an email correspondence between EEOC Senior Investigator, Kimberly Engram, and Plaintiff's counsel, Plaintiff argues that technical problems prevented receipt of the Notice by counsel. (Pl.'s Mem. Opp'n. at 5–6.) But these emails actually show that, on July 14, 2022, Plaintiff's counsel acknowledged receipt

8

of the Notice. (Dkt. 1-2 at 6 ("I have received the email with the Right to Sue Letter attached.").) Based on counsel's acknowledgment, Plaintiff had until October 12, 2022 to timely file his Title VII and ADEA claims. Plaintiff filed suit on October 15, 2022, ninety-three days after receipt of the Notice. (Dkt. 1.)

Counsel's email "negates the allegation in the Amended Complaint that [Plaintiff] received the Notice on or about July 18, 2022." (Defs.' Mem. Supp. at 4.) It is the rule in this Circuit that "[w]hen an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). That is the case here. Because Plaintiff filed his Title VII and ADEA claims beyond the 90-day window, they are untimely. Defendants' motion to dismiss Plaintiff's Title VII and ADEA claims as time-barred is therefore granted.

### B.    Section 1983 Claims.

Defendants argue that Plaintiff's Section 1983 claims should be dismissed for failure to plead facts establishing that Defendants Lara and Candia-Thompson had personal involvement in the alleged Constitutional deprivation. (Defs.' Mem. Supp. at 5.) To state a Section 1983 claim, a plaintiff must allege that he was deprived of a federal right, privilege, or immunity by a person acting under color of state law. *See Brown v. Budz*, 398 F.3d 904, 908 (7th Cir. 2005). There is no dispute that Plaintiff's case has been brought against persons acting under color of state law. What the individual Defendants dispute is that the Complaint adequately alleges they were personally involved in the alleged discriminatory conduct.

9

It is well-established that Section 1983 lawsuits against individuals "require personal involvement in the constitutional deprivation to support a viable claim." *Gonzalez v. McHenry County, Illinois*, 40 F.4th 824, 828 (7th Cir. 2022); *see also Johnson v. Rimmer*, 936 F.3d 695, 710 (7th Cir. 2019). This means that a plaintiff must allege how each defendant "caused or participated in the alleged deprivation of the plaintiff's constitutional rights." *Levin v. Madigan*, 692 F.3d 607, 621 (7th Cir. 2012). In other words, "[t]o establish personal liability, the plaintiff must show that the relevant official 'caused the constitutional deprivation at issue' or 'acquiesced in some demonstrable way in the alleged constitutional violation.' " *Gonzalez*, 40 F.4th at 828 (quoting *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003)).

This minimal standard is satisfied by the Complaint. It is settled law that "a defendant's direct participation in the deprivation is not required." *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986) (citing *Smith v. Rowe,* 761 F.2d 360 (7th Cir. 1985). To defeat a motion to dismiss, there must be a showing "that the official knowingly, willfully, or at least recklessly caused the alleged deprivation by his action or failure to act." *Id.* Plaintiff's allegations meet that standard.

As to Defendant Lara, Plaintiff pleads sufficient facts that he was "knowingly, willfully, or at least recklessly" involved in the alleged Constitutional deprivation. *Id.*; *see also* (Dkt. 11 ¶¶ 40–49.) For example, Lara issued a disciplinary write up based on Plaintiff's having missed a report, but Lara issued the write up *before* the report was due. Lara also constantly threatened Plaintiff with further disciplinary actions but never stated exactly what Plaintiff was doing wrong. (Dkt. 11 ¶¶ 47–49.)

10

Drawing inferences in Plaintiff's favor, Plaintiff sufficiently alleges that Lara had personal involvement in Plaintiff's constructive discharge. Defendants' motion to dismiss Plaintiff's Section 1983 claims against Lara is therefore denied.

As to Defendant Candia-Thompson, Plaintiff pleads sufficient facts that Candia-Thompson actually participated in, directed, or had knowledge of purportedly illegal conduct. (Def. Mem. Supp. at 6.) Plaintiff alleges that Candia-Thompson would approach Lara with information regarding Plaintiff's directives, allowing Lara to then challenge Plaintiff's abilities. (Dkt 11 ¶ 54.) Plaintiff's allegation allows the Court to infer that Candia-Thompson aided Lara in her alleged Constitutional deprivations and acquiescing in "some demonstrable way" satisfies the requirement that a defendant be personally involved in the alleged Constitutional deprivation. *See Turner*, 2020 WL 1166186, at *4 (N.D. Ill. Mar. 11, 2020) (citing *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001)). Defendants' motion to dismiss Plaintiff's Section 1983 claims against Candia-Thompson is therefore denied.

### C.    Motion to Strike Punitive Damages.

Rule 12(f) of the Federal Rules of Civil Procedure allows the Court to strike "redundant, immaterial, impertinent, or scandalous matter" from a complaint, but motions to strike are generally disfavored in this Circuit. *See Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Defendants move to strike Plaintiff's prayer for punitive damages against the College under Rule 12(f), because "punitive damages are unavailable [against] a governmental body in [a] Section 1983 claim." (Dkt. 15 at 3.) Defendants also argue that "[Plaintiff] has not

11

pled a Section 1983 claim against Lara or Candia-Thompson in their official capacities." (Defs.' Reply Mem. Supp. at 4.) Defendants rely on Plaintiff's Amended Complaint, which states Count IV is "[a]gainst Defendants Lara and Candia-Thompson, in their individual capacity." (Dkt. 11 at 16.)

If Plaintiff is suing Lara and Candia-Thompson in their individual capacities only, Defendants motion to strike punitive damages against the College is moot. Reviewing the evidence submitted, the Court finds that Plaintiff's claim is against Lara and Candia-Thompson only in their individual capacities. Despite Plaintiff's statement that he "indicated in the caption of the action that he is suing Defendants Lara and Candia-Thompson in their individual and official capacity," Plaintiff argues that Defendants' motion to strike punitive damages is moot because Defendants Lara and Candida-Thompson are being sued in their individual capacities only. (Pl.'s Opp'n at 8–9.) Because Plaintiff does not address punitive damages in relation to the College, it appears his claims against Defendants Lara and Candia-Thompson are brought only in their individual capacity. Punitive damages may be recovered against an individual in his or her individual capacity in a Section 1983 claim. *See Hill v. Shelander*, 924 F.2d 1370, 1373 (7th Cir. 1991); 42 U.S.C.A § 1983. Defendant's motion to strike Plaintiff's prayer for punitive damages is therefore denied as moot.

## IV.   CONCLUSION

Defendants' motion to dismiss Plaintiff's Title VII and ADEA claims (Counts I, II, III, and V) is granted with prejudice. Defendants' motion to dismiss Plaintiff's Section 1983 claims (Count IV) against Defendants Lara and Candia-Thompson is

denied. Defendants' motion to strike punitive damages against the College is denied as moot.

SO ORDERED in No. 22-cv-05663.

Date: September 18, 2023

_____

JOHN F. KNESS
United States District Judge